Argued and submitted April 24, affirmed September 11, 1996, petition for review denied April 8, 1997 (325 Or 247)

## STATE OF OREGON,
*Respondent,*

*v.*

## RONALD JEFFREY RIGGS,
*Appellant.*

## (94-10-36709; CA A88530)

923 P2d 683

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Timothy A. Sylwester argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Eleanor E. Wallace, Assistant Attorney General.

Before Deits, Presiding Judge, and De Muniz and Leeson, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant appeals from convictions for manufacture, delivery and possession of a controlled substance (marijuana). ORS 475.992. He assigns error to the denial of his motion to dismiss on double jeopardy grounds. We affirm.

On September 14, 1994, pursuant to a warrant, police searched a residence with which defendant was associated, discovering two pounds of marijuana in baggies and about 100 plants. The next day, police seized defendant's pick-up truck under a state civil forfeiture statute allowing confiscation of property that is used in, intended for use in, or obtained from certain illegal activities such as drug trafficking. Or Laws 1989, ch 791, § 3. Later that month, defendant settled the forfeiture case by agreeing to pay $250 for the return of his truck, which was valued at approximately $2,500. The parties stipulated that the settlement amount represented towing and storage costs.

In February 1995, defendant was tried on two counts each of manufacture, delivery and possession of a controlled substance, based on his connection with the plants and baggies found at the residence. Before trial, he filed a motion to dismiss, arguing that the civil forfeiture and later criminal prosecution punished him twice for the same crime, in violation of his double jeopardy rights. In his motion, he cited the Fifth Amendment to the United States Constitution, Article I, section 12, of the Oregon Constitution, and two federal cases—*Austin v. United States*, 509 US 602, 113 S Ct 2801, 125 L Ed 2d 488 (1993), and *United States v. $405,089.23 US Currency*, 33 F3d 1210 (9th Cir 1994), *cert granted* 116 S Ct 762, *rev'd* 116 S Ct 2135 (1996) (hereinafter *$405K*). At the pre-trial oral argument, defendant relied exclusively on those cases and made no arguments specific to the state constitution. The trial court denied defendant's motion and he was later convicted in a bench trial.

On appeal, defendant first contends that the civil forfeiture and subsequent criminal case subjected him to multiple prosecutions in violation of Article I, section 12.[1] The

---

[1] Article I, section 12, of the Oregon Constitution, provides, in part:

"No person shall be put in jeopardy twice for the same offence (*sic*)[.]"

state asserts that defendant failed to preserve any state constitutional issue because he made only Fifth Amendment arguments below. Merely citing to Article I, section 12, the state argues, was insufficient to preserve a claim under that provision, especially when defendant made no separate state constitutional argument to the trial court.

In *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988), the Oregon Supreme Court distinguished among raising an issue at trial, citing a source as support and making a particular argument. *Id.* at 188. The first is essential to preserving error, the second less so, and the third least. *Id.* Defendant contends that in the trial court he raised the issue (double jeopardy) and cited a source (Article I, section 12). The fact that he did not make a particular argument, he contends, is not fatal to preservation under *Hitz*.[2]

■ However, rules pertaining to preservation of error are intended

> "to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995).

By merely citing to Article I, section 12, while making an exclusively *federal* argument below, defendant did not clearly present the position he now takes on appeal. Furthermore, the state was denied the opportunity in the trial court to meet the state constitutional argument. *See also State v. Hickmann*, 273 Or 358, 360, 540 P2d 1406 (1975) (on appeal, case should be heard on same *theory* upon which it was presented in the court below); *Cf. State v. King*, 316 Or 437, 440 n 4, 852

---

[2] In *State v. Phillips*, 138 Or App 468, 471 n 2, 909 P2d 882, *rev den* 323 Or 114 (1996), we stated:

> "Although defendant alleged a violation of Article I, section 12, of the Oregon Constitution, on appeal both he and the state base their arguments solely on the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. We therefore limit our analysis to federal law."

Defendant attempts to distinguish *Phillips*, pointing out that on appeal, he presents a state constitutional argument distinct from the federal analysis. However, as discussed below, it is not defendant's argument on appeal that is dispositive, but rather what he argued in the trial court.

P2d 190 (1993) (issue preserved where defendant cited same case in trial and on appeal).

Although defendant below cited Article I, section 12, as a *source*, he cited no Oregon cases and gave no indication to the trial court that a different analysis would apply under the Oregon Constitution. In that sense, defendant failed to preserve the *issue* of former jeopardy under Article I, section 12. Defendant's state constitutional claim therefore was not preserved, and we focus solely on his argument under the Fifth Amendment.

■■ The Fifth Amendment to the United States Constitution provides, in part: "No person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb[.]" The Fifth Amendment's Double Jeopardy Clause prevents " 'successive punishments and * * * successive prosecutions.' " *United States v. Ursery*, ____ US ____ , ____ , 116 S Ct 2135, 2139, 135 L Ed 2d 549 (1996), *quoting United States v. Dixon*, 509 US 688, 696, 113 S Ct 2849, 125 L Ed 2d 556 (1993). The bar against multiple punishments prohibits, among other things " 'attempting a second time to punish criminally for the same offense.' " *Ursery*, 116 S Ct at 2139-40, *quoting Witte v. United States*, 515 US ____ , 115 S Ct 2199, 132 L Ed 2d 351 (1995).

Defendant contends that his criminal prosecution violated the Fifth Amendment, in part because the civil forfeiture of his truck is "punishment" under the Double Jeopardy Clause. As in the trial court, on appeal defendant cites *Austin v. United States*, in which the U.S. Supreme Court held that a federal *in rem* civil forfeiture scheme was "punishment" under the Eighth Amendment's Excessive Fines Clause. 509 US at 622. He also cites *$405K*, in which the Ninth Circuit relied on *Austin* in holding that civil forfeiture constitutes punishment under the Fifth Amendment if it serves any deterrent or punitive purpose, regardless of whether it also serves a remedial purpose. 33 F3d at 1219, 1222. However, after oral argument in this case, the United States Supreme Court held that *in rem* "civil forfeitures generally * * * do not constitute 'punishment' for purposes of the Double Jeopardy Clause" of the Fifth Amendment. *Ursery*, 116 S Ct at 2138.

■■ The *Ursery* Court held *Austin* inapplicable to a Double Jeopardy analysis and therefore rejected the Ninth Circuit's "punitive purpose" approach in *$405K*. The Court instead reaffirmed the two-part inquiry laid out in *United States v. One Assortment of 89 Firearms*, 465 US 354, 104 S Ct 1099, 79 L Ed 2d 361 (1984), for determining whether a forfeiture proceeding is punishment under the Fifth Amendment. Under that test, courts first consider whether the legislature intended the proceedings to be criminal or civil. *Ursery*, 116 S Ct at 2147. Second, they determine whether the proceedings are so punitive "in form and effect" as to render them criminal in fact, despite the legislature's intent to the contrary. *Id*. at 2147, 2148.[3]

Under the first prong, the *Ursery* Court held that the "distinctly civil" procedural mechanisms of the federal statutes in that case demonstrated Congress' intent to make the proceedings civil, not criminal. *Id*. at 2147. The Court first reasoned that by targeting property itself, Congress intended forfeiture to be *in rem* and impersonal, as opposed to the *in personam* nature of criminal prosecutions. *In rem* actions, the Court noted, historically have been viewed as civil. Second, the forfeiture statutes in *Ursery* dispensed with an "actual notice" requirement when the government could not identify any party with an interest in the property, and allowed a summary administrative proceeding if no party filed a claim. Finally, the statutes shifted the burden of proof to the claimant once the government demonstrated probable cause that the property was subject to forfeiture. *Id*. at 2147-48.

Under the second prong, the federal statutes were not deemed "so punitive as to render them criminal," partly because they served nonpunitive, as well as punitive, goals. 116 S Ct at 2148.[4] Additional considerations persuading the Court that the proceedings were civil in nature included: (1) historically, courts have not regarded *in rem* civil forfeiture as "punishment" under the Fifth Amendment's

---

[3] Under the second prong, a punitive "form or effect" must be shown by the "clearest proof." 116 S Ct at 2148.

[4] For example, the Court reasoned, the forfeiture statutes encouraged owners to carefully manage their property to ensure that it was not used for illegal purposes and, by allowing seizure of "proceeds," removed the profit motive from illegal acts. 116 S Ct at 2148-49.

Double Jeopardy Clause; (2) the statutes at issue did not require the government to prove "scienter" as a prerequisite to seizure;[5] (3) forfeiture's "deterrent" effect may serve civil as well as criminal goals; and (4) the fact that the forfeiture statutes "are tied to criminal activity" does not make them punitive, because Congress may attach both civil and criminal sanctions to the same act or omission. *Id.* at 2149.

■ Here, we conclude under the first prong of *89 Firearms* that the legislature intended Oregon's civil forfeiture proceedings to be civil, not criminal, in nature. First, as in *Ursery*, it is apparent that the legislature intended forfeiture proceedings under Or Laws 1989, chapter 791, to be *in rem*, and not *in personam*. Like the federal statutes in that case, Oregon's forfeiture scheme targets only property, not property owners or those in possession. Ch 791, § 3.[6] Furthermore, the legislature referred throughout the text of the statute to "civil in rem forfeiture" and "civil action in rem." *See, e.g.*, §§ 3, 7. Also, as in *Ursery*, chapter 791 requires notice only to those "persons known to have an interest," § 6(1), and allows forfeiture by affidavit if no timely claim is filed, § 6(4). Finally, the reference to the Oregon Rules of Civil Procedure throughout the statute is another indication that the legislature intended the proceedings to be civil, not criminal. *See, e.g.*, §§ 2(2) (attorney fees); 2(3) (costs and disbursements); 6(1) (service); 7(2)(a) (claimant's response); 7(4) (judicial proceedings).

Under the second prong of *89 Firearms*, we are unable to find the "clearest proof" that chapter 791 is so punitive in form or effect that it is the factual equivalent of a criminal proceeding. Oregon's forfeiture law serves the same nonpunitive goals as the federal statutes in *Ursery*. *See* note 4 above. Simply because it may also serve punitive goals does not necessarily make it "punishment" under the Fifth Amendment. 116 US at 2148. Furthermore, as the *Ursery*

---

[5] The presence of an "innocent owner" exception, the Court reasoned, was not relevant to whether the statutes were punitive for double jeopardy purposes. 116 S Ct at 2149.

[6] The statute does not target "guilty property owners," as defendant contends. As in *Ursery*, chapter 791 allows forfeiture of property "even if no party files a claim to it and the [state] never shows any connection between the property and a particular person." 116 S Ct at 2149.

court noted, *in rem* civil forfeiture historically has not been considered punitive for double jeopardy purposes, and the deterrent effect of chapter 791 serves both criminal *and* civil goals. Finally, like the federal statutes in *Ursery*, Oregon's forfeiture scheme does not require the forfeiting agency to prove scienter, and the fact that the "prohibited acts" are tied to criminal behavior is insufficient to render the statute "criminal." *Id*. at 2149.

We hold that Oregon's civil forfeiture statute, Or Laws 1989, ch 791, does not constitute "punishment" for double jeopardy purposes under the Fifth Amendment. *Accord State v. Vettrus*, 142 Or App 359, 922 P2d 673 (1996); *Umatilla County v. $18,005 in U.S. Currency*, 142 Or App 513, 921 P2d 426 (1996). Accordingly, the forfeiture of defendant's truck did not render his subsequent criminal prosecution unconstitutional, and the trial court correctly denied defendant's motion to dismiss.

Affirmed.